UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENO GOMEZ,<br><br>                          Petitioner,<br><br>v.<br><br>W.L. MONTGOMERY, Warden,<br><br>                          Respondent. | Case No.: 18-CV-2607-CAB(WVG)<br><br>REPORT AND RECOMMENDATION FOR ORDER GRANTING MOTION TO DISMISS PETITION FOR WRIT OF HABEAS CORPUS<br><br>[ECF No. 9.] |

## I.     INTRODUCTION

Currently before the Court is Respondent W.L. Montgomery's ("Respondent") Motion to Dismiss ("Motion") Petitioner Geno Gomez's ("Petitioner") Petition for Writ of Habeas Corpus ("Petition") on the basis that the Petition does not attack the legality or duration of Petitioner's confinement to confer habeas jurisdiction and, in the alternative, that the Petition fails to state a cognizable federal question to invoke subject matter jurisdiction. (ECF No. 9.)

The Court, having reviewed the Petition, the Motion to Dismiss, and all supporting documents submitted by both parties, **RECOMMENDS** the Motion be **GRANTED** and the Petition be **DISMISSED** without prejudice to Petitioner pursuing his claim under § 1983.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. State Court Trial

Petitioner was found guilty of second-degree murder, arising from a conviction in Orange County Superior Court case number 99CF3023. (Motion, Doc. No. 8-2 at 64.)[1] In that case, Petitioner struck his victim with a bat, bound him with a wire, and strangled him to death. (*Id.* at 67.) Petitioner then wrapped the body in plastic and dumped it in Oceanside. (*Id.*) Petitioner was sentenced 15 years-to-life with a minimum eligible parole date of November 23, 2014. (*Id.* at 64.)

### B. Initial Parole Consideration Hearing

Petitioner was deemed unsuitable for parole during his initial parole consideration hearing on July 1, 2015. (Doc. No. 8-2 at 64.) The panel denied parole for seven years based on Petitioner's heinous crime, twelve rules violations, prior criminal record, unstable social history, inadequate signs of remorse, unreasonable parole plans, lack of anger management, and an unfavorable Comprehensive Risk Assessment. (*Id.* at 64-77.)

### C. State Prison Rules Violation Proceeding

On March 7, 2017, a letter addressed to Petitioner was scanned by Ms. H. Duarte, a mailroom supervisor at Calipatria State Prison. (Doc. No. 8-2 at 58.) Ms. Duarte observed anomalies in a manila envelope and upon further inspection found ten other envelopes, each containing one hypodermic needle. (*Id.* at 59.) Rules violation proceedings were initiated against Petitioner for violating California Code of Regulations, Title 15, Section 3016(c).[2] (*Id.*)

---

[1] All citations to documents filed on the CM/EMF docket refer to the electronic pages numbers generated by the CM/ECF system, not to the document's original pagination.

[2] The Petition refers to the violated subdivision as subdivision (b). However, the Petition quotes the language in subdivision (c). This report and recommendation will refer to subdivision (c), which states: "Inmates shall not possess, exchange, manufacture, or have under their control any drug paraphernalia . . . or device related to the use, injection, or manufacture of any controlled substance . . . ."

During the rules violation proceedings on March 23, 2017, Petitioner argued that he should not be disciplined because he could not control what someone sent him in the mail. (*Id.*) Moreover, Petitioner argued he was never in control of the envelope. (*Id.*)

However, one can be guilty of violating § 3016(c) through a conspiracy because under California Code of Regulations, Title 15, Section 3323(e)(8), possession of drug paraphernalia is a Division "C" offense, and subsection 3323(e)(12) provides that "conspiracy to commit any Division 'C' offenses" is a Division "C" offense. (*Id.*)

The Senior Hearing Officer (SHO) found that Petitioner violated § 3016(c) due to the complex manner in which the hypodermic needles were hidden. (*Id.* at 40.) The SHO reasoned that Petitioner must have communicated with the sender. (*Id.*) Sanctions consisting of the following issued against Petitioner: (1) 91 days credit loss; (2) 10 days confinement to quarters; (3) 90 days loss of canteen privileges; (4) 90 days loss of day room privileges; and (5) four months of mandatory drug testing. (*Id.* at 39-40.)

On April 18, 2017, Petitioner filed an administrative appeal of the above decision. (Doc. No. 8-2 at 45.) Petitioner was permitted to bypass the first level of review in the three-level review system. (*Id.*) The second level appeal was denied on May 30, 2017. (*Id.* at 49.) Petitioner then submitted another appeal to the third and last level of review on June 20, 2017. (*Id.* at 46.) On August 24, 2017, the third level appeal was denied, thereby exhausting Petitioner's administrative remedies. (*Id.* at 52.)

**D.     Habeas Petition in State Court**

Following the completion of the administrative review process, Petitioner filed a habeas corpus petition in the Superior Court of California, County of Imperial, on November 3, 3017. (*Id.* at 58.) Petitioner alleged due process violations with respect to the March 23, 2017, rules violation proceeding. (Petition, Doc. No. 1 at 9.) On December 4, 2017, the superior court denied the Petition because there was sufficient evidentiary support to sustain the disciplinary finding. (Doc. No. 8-2 at 59.) Petitioner thereafter filed a habeas petition in the California Court of Appeal and raised the same claim. (Doc. No. 8-2 at 17-23.) The Court of Appeal denied the petition on February 22, 2018. (Doc. No. 1

at 42-44.) On September 19, 2018, the California Supreme Court summarily denied the habeas petition Petitioner subsequently filed before that court. (*Id.* at 46.)

E.  **Habeas Petition in Federal Court**

On November 13, 2018, Petitioner filed the instant Petition in federal court. (Doc. No. 1 at 1.) On February 22, 2019, Respondent filed a motion to dismiss the Petition on the basis that it does not confer habeas jurisdiction, as it does not attack the legality or duration of Petitioner's confinement. (Doc. No. 8-1 at 1.) Respondent alternatively argues that the Petition fails to state a cognizable federal question to invoke subject matter jurisdiction. (*Id.*)

### III.  DISCUSSION

A.  **Federal Habeas Corpus Jurisdiction**

Petitioner seeks habeas relief for alleged violations of due process rights stemming from the rules violation proceedings described above. (Doc. No. 1 at 9.) Petitioner demands the rules violation true finding be expunged from his record and all lost days of credit restored. (*Id.* at 17.) The issue raised by the Motion is whether federal habeas jurisdiction exists to consider the Petition on the merits. (Doc. No. 8-1 at 1.) Petitioner alleges that the disciplinary decision violated his due process rights on the basis that (1) the prison officials misapplied California law and (2) there was no evidence to support the disciplinary violation. (Doc. No. 1 at 12, 14.)

However, the arguments above are immaterial if federal habeas jurisdiction does not exist in the first place. *See Nettles v. Grounds*, 830 F.3d 922, 935 (9th Cir. 2016) (en banc). Respondent contends that there is no jurisdiction because the Petition does not challenge the legality or duration of Petitioner's confinement. (Doc. No. 8-1 at 2.) Alternatively, Respondent argues that there is no jurisdiction because the Petition does not allege a cognizable federal question. (*Id.* at 4.)

**1. Legality or Duration of Petitioner's Confinement**

Generally, prisoners' claims under federal law fall into two distinct categories: "a petition for habeas corpus, 28 U.S.C. § 2254, and a complaint under the Civil Rights Act

of 1871 . . . 42 U.S.C. § 1983." *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (per curiam). Habeas corpus actions involve "[c]hallenges to the validity of any confinement or to particulars affecting its duration." *Id.* Federal habeas jurisdiction only exists where the relief sought would "necessarily lead to [Petitioner's] immediate or earlier release from confinement." *Nettles*, 830 F.3d at 935; *see also Skinner v. Switzer*, 562 U.S. 521, 534 (2011).

The Ninth Circuit's decision in *Nettles* controls whether the Petition here falls within the core of habeas. There, the petitioner was a life inmate and past his minimum eligible parole date when he filed a habeas petition. *Nettles*, 830 F.3d at 925-27. The habeas petition challenged a disciplinary decision where the petitioner lost 30 days of credit. *Id.* at 927. The court found that there was no federal habeas jurisdiction because "success on [petitioner's] claims would not necessarily lead to his immediate or earlier release from confinement." *Id.* at 935. The court reasoned that "because the parole board has the authority to deny parole 'on the basis of any grounds presently available to it,' the presence of a disciplinary infraction does not compel the denial of parole." *Id.* (citation omitted) (quoting *Ramirez v. Galaza*, 334 F.3d 850, 859 (9th Cir. 2003)); *see also Sandin v. Conner*, 515 U.S. 472, 487 (1995) (holding that the "decision to release a prisoner rests on a myriad of considerations.").

Respondent argues, and the Court agrees, that the relief sought by Petitioner would not necessarily result in a speedier release. (Doc. No. 8-1 at 2.) Like *Nettles*, in this case Petitioner is serving an indeterminate term of 15 years-to-life and his minimum eligible parole date has already passed. *See Nettles*, 830 F.3d at 935. Expungement of Petitioner's violation will not necessarily result in a speedier release because violations are "merely one of the factors shedding light" on whether a prisoner is suitable for parole. *Id.* Therefore, under California law, a panel of the Board of Parole Hearings could still deny parole to Petitioner even if he succeeded in expunging the violation. *Id.*; *see also Ramirez v. Galaza* 334 F.3d 850, 859 (9th Cir. 2003) (reasoning that expunging violations does not automatically accelerate eligibility for parole). This is especially true in Petitioner's case

because he was already denied parole for multiple separate reasons, including 11 other rules violations in addition to the one at issue here, Petitioner's heinous crime, prior record, unstable social history, inadequate signs of remorse, unreasonable parole plans, lack of anger management, and an unfavorable Comprehensive Risk Assessment. (Doc. No. 8-2 at 64-77.)

Moreover, the credit loss suffered by Petitioner does not affect the length of his confinement because "for convicted murderers . . . who are sentenced to an indeterminate term . . . credits go towards advancing only their minimum eligible release date." *In re Jenkins*, 50 Cal. 4th 1167, 1179 (2010); *see also* Cal. Code Regs. Tit. 15, § 3043 (credits only advance an indeterminately sentenced inmate's initial parole hearing date). Additionally, because Petitioner was convicted of second-degree murder, he cannot accrue credits against his sentence. Cal. Penal Code § 2933.2. Consequently, "success on [Petitioner's] habeas claim would not necessarily lead to [his] immediate or earlier release from confinement." *Patkins v. Holland*, 691 Fed. Appx. 494, 494 (9th Cir. 2017).

In sum, neither expunging the rules violation nor restoring the lost credit would necessarily lead to Petitioner's speedier release from confinement. *See Nettles*, 830 F.3d at 935. Thus, Petitioner's claim does "not fall within 'the core of habeas corpus,' and he must instead bring his claim under § 1983." *See id.* (quoting *Skinner*, 562 U.S. at 536). Accordingly, the Court **RECOMMENDS** Respondent's motion be **GRANTED** and the Petition be **DISMISSED** without prejudice to Petitioner pursuing his claim under § 1983.

### 2. Cognizable Federal Claim

Alternatively, Respondent asks the Court to dismiss the Petition because it does not raise a cognizable federal claim. (Doc. No. 8-1 at 4.) Respondent argues both that Petitioner does not have a federally protected liberty interest and that Petitioner does not raise a federal question. (*Id.* at 4-7.) The Court agrees.

#### a. Liberty Interest

The Supreme Court has held that when a state statute gives rights to good-time credits, the prisoner has a sufficient liberty interest of "real substance." *Wolff v. McDonnell*,

418 U.S. 539, 557 (1974). The liberty interest entitles prisoners to certain procedural protections under the Due Process Clause. *Id.* These procedural protections include: (1) advance written notice of charges; (2) a written statement as to the evidence relied on in determining the disciplinary action; (3) ability to call witnesses and present evidence; and (4) an impartial fact finder. *Id.* at 540-41.

Petitioner does not allege that any procedural protections were violated under *Wolff*. (Doc. No. 1.) Moreover, the liberty interest identified in *Wolff* is not present here because Petitioner's loss of credits cannot extend his minimum sentence, as his minimum eligible parole date already has passed. (Doc. No. 8-2 at 64.) Similarly, Petitioner's maximum sentence is not extended because his sentence is potentially for life. (*Id.*) Consequently, Petitioner does not allege a liberty interest that has been violated under *Wolff*. *See* 418 U.S. at 540-41.

Furthermore, the Supreme Court has narrowed the holding in *Wolff* by defining what constitutes a liberty interest of "real substance." *Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995). Generally, a liberty interest of "real substance" is limited to freedom from restraint that either (1) imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or (2) "will inevitably affect the duration of [the inmate's] sentence." *Id. Sandin*'s first prong is not satisfied because Petitioner does not allege that the disciplinary violation imposed an "atypical and significant hardship." Moreover, no facts in the petition indicate that loss of credits imposed such a hardship.

Similarly, the second prong of *Sandin* is not met because, as discussed above, the success of Petitioner's claims will not inevitably affect the duration of his sentence. *See Sandin*, 515 U.S. at 487. *Sandin* rejected the argument that a liberty interest exists based on the possibility of denied parole. *Id.* Specifically, any effect a violation has on his confinement is simply "too attenuated to invoke the procedural guarantees of the Due Process Clause." *Id.*

Ultimately, Petitioner does not allege a federally protected liberty interest that could give rise to federal habeas jurisdiction. *See Wolff*, 418 U.S. at 557; s*ee also Sandin*, 515 U.S. at 484, 487.

### b. Federal Question

Respondent argues, and the Court agrees, that Petitioner's allegation of prison officials misapplying California law does not raise a federal question. (Doc. No. 8-1 at 7.)

Federal habeas review is not available for allegations of state law violations. *See* 28 U.S.C. § 2254(a); *see also Engle v. Isaac*, 456 U.S. 107, 119 (1982). Specifically, a "mere error of state law" does not invoke a federal question. *Engle*, 456 U.S. at 121 n.19. Otherwise, "every erroneous decision by a state court on state law would come [to this Court] as a federal constitutional question." *Id.* Thus, federal habeas review is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *Estelle v. McQuire*, 502 U.S. 62, 68 (1991).

Here, Petitioner alleges that prison officials violated his due process rights by arbitrarily construing the California Code of Regulations and California case law. (Doc. No. 1 at 12.) However, neither of these can be construed as the Constitution, a law of the United States, or a treaty of the United States. *See Estelle*, 502 U.S. at 68. Thus, this allegation fails to raise a cognizable basis for habeas review. *See id.*

## B. Conversion to Section 1983 Action

A district court may construe an incorrectly filed habeas petition as a § 1983 action "[i]f the complaint is amenable to conversion on its face, meaning it names the correct defendants and seeks the correct relief." *Nettles*, 830 F.3d at 936. To do so, the court must notify and obtain "informed consent from the prisoner." *Id.* In this context, "informed consent" requires warning the "pro se litigant of the consequences of the conversion and provid[ing] an opportunity for the litigant to withdraw or amend his or her complaint." *Id.*

Although the Court may construe a wrongly filed habeas petition as a § 1983 action, the Court recommends declining to do so in this case. *See id.* The Petition is not "amenable to conversion on its face" because there are no factual allegations against the only named

Respondent, Warden Montgomery. Moreover, it is unclear who Petitioner seeks to hold responsible for the alleged denial of his due process rights, other than an unnamed "Senior Hearing Officer." *See Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).

Accordingly, the Court **RECOMMENDS** declining to construe this action as a civil rights complaint because it is not amenable to "conversion on its face." *See Nettles*, 830 F.3d at 936.

## IV. CONCLUSION

For the reasons set forth above, the Court **RECOMMENDS** that Respondent's Motion to Dismiss Petition for Writ of Habeas Corpus be **GRANTED** and the Petition be **DISMISSED** without prejudice to Petitioner pursuing his claim under § 1983.

**IT IS ORDERED** that no later than **August 16, 2019** any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to objections shall be filed with the Court and served on all parties no later than **August 23, 2019**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal. *Martinez v. Ylst*, 951 F2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated: July 11, 2019

Hon. William V. Gallo
United States Magistrate Judge